[No. D015167. Fourth Dist., Div. One. Feb. 1, 1994.]

UNITED ENTERPRISES, LTD., Plaintiff and Appellant, v.
ASSESSMENT APPEALS BOARD OF SAN DIEGO COUNTY,
Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts V and VI.

**COUNSEL**

Lempres & Wulfsberg, B. Suzanne Farley and Gregory R. Aker for Plaintiff and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel and Leonard W. Pollard II, Deputy County Counsel, for Defendant and Appellant.

**OPINION**

**FROEHLICH, Acting P. J.**—In this tax refund case the County of San Diego (County) appeals from the judgment of the trial court which ordered County to reduce the assessment on certain property. The primary issue on appeal involves the proper application of Revenue and Taxation Code[2]

---

[2]All statutory references are to the Revenue and Taxation Code unless otherwise specified.

section 1604. Under section 1604, when a taxpayer applies for reduction of an assessment, the Assessment Appeals Board (the AAB) must hear and decide the matter within two years, subject to certain extensions and/or exceptions discussed hereafter. If the AAB fails to meet those time limits, the taxpayer's opinion of value becomes the assessed value. The trial court ruled the AAB's decision here was untimely and ordered that the taxpayer's opinion of value be enrolled as required by section 1604. This appeal followed.

## I. *Factual Background*

The dispute arose because County contended, and United Enterprises, Ltd. (taxpayer) denied, that certain property owned by taxpayer was subject to reassessment due to a "change in ownership." In 1987 the county assessor notified taxpayer that its property would be reassessed based on an alleged change of ownership of its property in 1983. Because this appeal turns on whether the AAB's decision on taxpayer's application for equalization was timely, and whether various estoppel periods may be applicable, the dates of events are significant.

On September 15, 1987, taxpayer filed its application seeking equalization of the 1984, 1985, 1986 and 1987-1988 assessments. It claimed that reassessment was improper because no "change of ownership" had occurred within the meaning of Proposition 13; and it also asserted that it wished to reserve the right to challenge the individual revaluations in the event the change of ownership issue was decided adversely to taxpayer. This September 15, 1987 filing began the two-year period under section 1604 within which the AAB was required to act on taxpayer's application.[3]

Nine months later, on June 21, 1988, the AAB held its first hearing on the application. Prior to that hearing, however, the parties agreed (1) the "change of ownership" issue should be bifurcated from the "valuation" question, (2) the June 21 hearing would be devoted only to the "change of ownership" issue, and (3) the valuation question would be reserved until a decision was rendered on the question of "change of ownership."

---

[3]County asserted in oral argument that since taxpayer's reduction assessment applications were several in number, pertained to different parcels of property, and were filed over a period of time *commencing* with September 15, 1987, but terminating at a much later date, the two-year statute should not commence until the date of the last-filed application. We decline to consider this theory (though an interesting one) at the appellate level because the contention was not raised or mentioned in any fashion in the trial proceedings (not in written papers and not in County's motion for reconsideration or during oral argument). (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 311, pp. 321-322.)

No decision was made at the June 21 hearing, and the matter was continued until August 23, 1988. The August 23 hearing had initially been reserved for the valuation issue. However, because taxpayer requested and was granted the opportunity to file a reply brief in opposition to County's brief on the change of ownership question, the August 23 hearing was devoted to issues raised by taxpayer's reply brief. At the close of the August hearing, the AAB indicated the valuation issue would be scheduled for a later date. However, because the AAB had refused taxpayer's attempts to introduce new evidence at the August 23 hearing, taxpayer objected to an early hearing on the valuation issue based on its intention to appeal from the AAB's refusal to permit new evidence. Although the AAB suggested a November date for the hearing on valuation, taxpayer's counsel's impending child delivery date forced the schedule into January 1989. Accordingly, the valuation hearing was scheduled for the first available date in January and ultimately set for January 20, 1989.

However, all proceedings ceased when, on October 12, 1988, taxpayer filed a petition for a writ of mandate to force the AAB to allow new evidence. The trial court issued an order to show cause and stayed all proceedings by the AAB. The hearing on the order to show cause was scheduled for November 9 but was continued to December 28. Prior to the December 28 hearing on taxpayer's writ petition, taxpayer was informed the AAB had dropped the January 20, 1989 hearing from its calendar.

The trial court heard argument on the 1988 writ petition and took the matter under submission. It issued its ruling denying taxpayer's petition on January 3, 1989, and on that date vacated the stay.

On May 16, 1989, the AAB adopted findings on the first issue, concluding there had been a change of ownership. On September 15, 1989, the two-year period for acting on taxpayer's application, if no extension were available, would have lapsed.

In late 1989 the AAB notified the parties that the valuation issue would be heard on February 21 and 22, 1990. An "extended" period, as calculated by the trial court below, taking into consideration the litigation stay, elapsed on February 4, 1990. On February 9, 1990, taxpayer filed a complaint for a refund of overpaid taxes, alleging that no change of ownership had occurred.

Taxpayer appeared at the February 21, 1990 AAB hearing and requested a continuance to allow new counsel to prepare for the hearing and to explore possible settlement of the lawsuit and valuation issue. Taxpayer's request was granted. At that time the AAB's clerk asked Mr. Chambers, an apparent

agent for taxpayer, to sign a written waiver of the two-year statute, and Chambers agreed to do so. The hearing was rescheduled for April 11.

On two subsequent occasions the clerk for the AAB inquired of Mr. Chambers as to when the AAB could expect the written waiver. Mr. Chambers initially assured the AAB it would be forthcoming. However, he subsequently advised the AAB that in light of the impending April 11 hearing, it seemed unnecessary to file such waiver.

In early April the parties called the AAB, stated a settlement had been reached, and requested cancellation of the April 11 hearing. The AAB complied. On May 16, 1990, however, taxpayer notified the AAB of taxpayer's claim that the AAB had failed to comply with the two-year rule under section 1604, and demanded that taxpayer's opinion of value be entered on the tax roll.

The AAB scheduled a hearing to determine whether it had failed to act timely and to hear the valuation issue if appropriate. Taxpayer appeared at the hearing, objecting on the grounds the AAB had failed to act timely and had failed to comply with subdivisions (c) and (d) of section 1604. On August 22, 1990, the AAB decided it had timely acted or was excused from timely acting. At that time the AAB also issued its decision on the valuation issue.

## II. *The Current Lawsuit*

Taxpayer thereafter filed this action seeking a writ of administrative mandamus. Arguing the AAB had failed to act timely, taxpayer sought (1) to stay enforcement of the August 22, 1990 ruling of the AAB, (2) to compel the AAB to vacate that ruling, and (3) to compel the AAB to enroll the taxpayer's opinion of value under section 1604. Taxpayer also sought attorney fees.

The trial court ruled in favor of taxpayer. The court concluded: (1) the two-year statute was tolled for the duration of pendency of the 1988 petition for writ of mandate but nevertheless expired on February 4, 1990; (2) there was "no authority" to allow equitable tolling of the statute; and (3) it could not enforce the alleged 1990 settlement agreement. Accordingly, the court ordered the AAB to vacate its decision and enroll taxpayer's opinion of value. It subsequently awarded taxpayer costs but denied the request for attorney fees.

County's appeal raises numerous challenges, which we will address seriatim.[4]

### III.  *Section 1604 Applies to Appeals of Reassessments Based on Change of Ownership*

■■■  County first argues the two-year time limit under section 1604, subdivision (c) is not applicable here because taxpayer's property was reassessed based on the unreported "change of ownership" which occurred in 1983. County relies on subdivision (d) of section 1604, which provides: "If, pursuant to subdivision (c), the applicant's opinion of value has been placed on the assessment roll, that value shall remain on the roll until the [AAB] makes a final determination on the application. The value so determined by the [AAB], plus appropriate adjustments for the inflation factor, shall be entered on the assessment roll for the fiscal year in which the value is determined. No increased or escape taxes other than those required by a purchase, change in ownership, or new construction, or resulting from application of the inflation factor to the applicant's opinion of value shall be levied for the tax years during which the [AAB] failed to act."

The present case involved reassessment based on a change of ownership. County claims the language that "[n]o increased or escape taxes other than those required by a . . . change in ownership . . . shall be levied for the tax years during which the [AAB] failed to act" suggests, by negative implication, that appeals of reassessments are allowed to extend beyond the two-year limit if the case involves a change of ownership. We disagree.

■■■  The purpose of section 1604 is to assure a prompt resolution of applications for reduction of assessments. (*Shell Western E & P, Inc.* v. *County of Lake* (1990) 224 Cal.App.3d 974, 984-985 [274 Cal.Rptr. 313].) The section is designed to prevent bureaucratic delay and forestalling of the return of taxpayer's money, by providing a significant disincentive for a taxing authority to delay resolution of the case. (*Ibid.*)

■■■  We reject County's claim that section 1604, subdivision (d) carves out exceptions to the two-year rule. First, County's interpretation would effectively gut the statute, because all of the principal events permitting reassessment (i.e., change of ownership, new construction, and inflation adjustments) would be exempted from the two-year rule.

Second, the statutory language and the surrounding legislative history indicate the intent of section 1604 subdivision (d)'s "other than" language

---

[4]Taxpayer cross-appeals, claiming the trial court erred in refusing its request for attorney fees. In that we reverse and remand, this issue is moot.

was distinct and limited. It would permit reassessment based only on new events occurring during the period of the AAB's consideration of the taxpayer's application. The language itself specifies "[n]o increased or escape taxes . . . shall be levied *for the tax years during which the [AAB] failed to act.*" (Italics added.) This language evinces an intent that where an applicant has applied to reduce his taxes for a prior year and the AAB fails to act within two years, the taxpayer prevails and his taxes must be reduced both for the year listed in the application and for the years his application sat idle. However, though the application for reduction is essentially deemed granted by lapse of time, events which occur *while the application is pending* ("the tax years during which the [AAB] failed to act") can be the basis for reassessment.

That such was the intent of the Legislature is confirmed by the surrounding legislative history. Substantial legislative history shows that Senate Bill No. 1685, which added subdivision (d) to section 1604 in 1986 (see Stats. 1986, ch. 982, § 28), was intended to clarify that the failure to act on an application would not force the assessor *permanently* to enroll the taxpayer's opinion of value where intervening changes occurred.[5] Thus, subdivision (d) both clarifies that the taxpayer's value controls only "until the [AAB] makes a final determination on the application" and exempts any reassessable events which occurred in the intervening period from the operation of the "automatic reduction" of section 1604. There is no indication the language on which County relied had any purpose other than to exempt from the freeze those reassessable events which occurred after the taxpayer's application was filed.

---

[5]The Analysis of Senate Bill 1685, prepared for the Senate Committee on Local Government, indicates the Legislature was concerned that after two years "the taxpayer's opinion can become the permanent valuation. Senate Bill 1685 provides that a taxpayer's opinion . . . remains the official value until the board comes to a final decision." A Legislative Bill Analysis dated February 4, 1986, and prepared by Mr. Gustafson of the State Board of Equalization, indicates "There remains some question as to what would happen if there were new construction on the property in any of the years during which the assessment freeze prevailed. Would the assessor be permitted to modify the assessment for new construction? One may also wonder if a change in ownership could be recognize [*sic*] under this restrictive language." In apparent response to these concerns, the State Board of Equalization prepared and forwarded to the author of Senate Bill No. 1685 some proposed amendments which, among other things, addressed the problem that the freeze "does not permit recognition of changes in value due to a change in ownership or new construction." (See State Bd. of Equalization, Memo re Sen. Bill No. 1685—Proposed Amends. from Mr. Ochsner to Mrs. Boatwright, dated Mar. 11, 1986.) To remedy that problem the memo proposed a change to section 1604, subdivision (d) by inserting after the words "than those" the phrase "required by a purchase, change of ownership, or new construction, or . . . ." This is the precise language ultimately adopted by subdivision (d).

## IV. The AAB Failed to Issue Its Final Decision on Valuation Within the Period Prescribed by Section 1604

We turn next to the critical inquiry: Was the AAB's decision on valuation timely?[6] Section 1604 requires rendition of a decision within two years, although compliance with the two-year rule is partially excused where pending litigation relates directly to the issues involved in the application. Several issues are presented by this deceptively simple concept. First, was the decision timely because a decision on the change of ownership issue was rendered within the two-year time frame? Second, was the two-year period properly extended because of the pendency of controlling litigation? If such extension was granted, was the final decision of valuation made before the expiration of the two-year period as extended?

### A. The Decision on Change of Ownership, and Taxpayer's Response Thereto, Did Not Discharge the AAB's Duty to Decide Timely All Issues

County's initial argument is that the decision on "change of ownership," which was clearly made within the two-year period, was timely on the application because taxpayer "abandoned" pursuit of the valuation question.[7] County's argument rests on the fact that, following the AAB's ruling on the "change of ownership" issue, taxpayer did not wait for a determination on

---

[6]We note that the lapse of the two-year period does not forever "lock" the assessed value at the lower "taxpayer's opinion" of value, nor does the failure to act within two years deprive the AAB of the right to consider and rule on the application. To the contrary, as discussed in part III, *ante*, the "lower value" remains only *until such time as the board renders its decision*, because section 1604, subdivision (d) specifies that the "value shall remain on the roll until the [AAB] makes a final determination on the application. The value so determined by the [AAB], plus appropriate adjustments for the inflation factor, shall be entered on the assessment roll for the fiscal year in which the value is determined." Thus, our decision here only affects the tax years covered by the application and those years during which the board failed to act on taxpayer's application. Because the statute limits the "penalty" for a delayed AAB decision, the original judgment of the trial court below (i.e., vacating the AAB's decision and ordering the taxpayer's value enrolled) was erroneous as overbroad, since a late AAB decision is not void but is to be entered "for the fiscal year in which the value is determined." We thus caution that even if the trial court on remand decides against County on the alleged settlement, its judgment must be revised to fit the statutory requirements.

[7]A related but distinct question might arise where the sole issue in dispute is whether a change of ownership had occurred, without any companion challenge to valuation. In a case in which the taxpayer challenges only whether the event permitting revaluation has occurred, and not the amount assessed assuming revaluation was proper, the sole decision to be made within the two-year period is the determination of whether revaluation was proper. Here, however, taxpayer raised and litigated two issues in the bifurcated hearings: Was there a change of ownership (phase one), and, if so, what was the proper value of the properties? No final determination of taxpayer's application could be made, therefore, until both issues were resolved.

the remaining bifurcated issue, but pursued a refund by its February 9, 1990 lawsuit on the ground there was no change of ownership. County asserts that because a taxpayer must exhaust his administrative remedies as a condition to a lawsuit seeking relief from an erroneous assessment (*Security-First Nat. Bk.* v. *County of L.A.* (1950) 35 Cal.2d 319, 320 [217 P.2d 946]), the lawsuit here was as a matter of law an "abandonment" of the right to further pursue the valuation issue. County cites no authority for this contention. Although the 1990 refund lawsuit may have been a premature attempt to obtain piecemeal review of the administrative proceeding, it was not an abandonment of the right to pursue administrative remedies. ■ Dismissal is the remedy for a lawsuit filed before administrative remedies are exhausted (*Park 'N Fly of San Francisco, Inc.* v. *City of South San Francisco* (1987) 188 Cal.App.3d 1201, 1207-1208 [234 Cal.Rptr. 23]), not abandonment of the remaining administrative proceedings. ■ Further, the potential of partial appeals is suggested by the provision in section 5141 that an action appealing a denial of a refund must be commenced within six months "after the date [the AAB] rejects a claim for refund in whole or in part."

B. *The Applicable Period Expired Before the Final Decision Was Entered*

The trial court concluded the two-year period was extended by the amount of time the 1988 writ proceedings were pending. The trial court calculated that an additional 143 days should be added to the 2-year period, apparently comprising (1) the 83 days between the October 12, 1988 filing of the writ petition and the January 3, 1989 ruling thereon, plus (2) the 60 days during which an appeal could have been filed before the ruling became final.

County contends: (1) the 1988 writ litigation was properly added to the 2 years, but the appeal time should have been 180 days rather than 60; and (2) the 1990 refund lawsuit should also have been "tacked" onto the 2 years. Taxpayer counters: (1) no time should be added based on the 1988 writ litigation; (2) if time were to be added, it would be proper to limit it to 83 plus 60 days; and (3) no time should be added for the 1990 refund lawsuit.

Extension of the two-year period could conceivably come about as the result of various factors occurring during the period. The AAB certainly could not be expected to act during the pendency of a court-issued stay, as occurred in this case. We apprehend, however, that such impediment to action would not tack the stayed period onto the two-year period (as contended by County) but would excuse County action only during the period of the stay and for a reasonable period thereafter. (See, e.g., *Regus* v.

*Schartkoff* (1957) 156 Cal.App.2d 382, 387 [319 P.2d 721] [reasonable time to act added to limitations after conduct causing inaction has ceased].) We need not dwell upon this possible aspect of an extension to the two-year period, however, because the time of the stay was too short to benefit the County. The court-ordered stay lasted only 83 days, expiring in mid-December 1989, well before the 2-year deadline.

■ The only potential for avoidance of the running of the two-year period in this case, therefore, is the utilization of rule 309 of the Real Property Tax Rules (Cal. Code Regs., tit. 18, § 309).[8] Rule 309 explains and defines the "where litigation is pending directly relating to the issues involved in the application" exception to the running of the two-year period, as contained in section 1604—the so-called "controlling litigation" exception. The rule provides that when a board determines to delay its decision because of the pendency of controlling litigation, the final decision must be made within the two years "excluding the period of time between the notice of pending litigation and the date that the litigation becomes final."[9] Thus, a rule 309 modification of the two-year period does in fact "tack" the period of pending litigation to the two-year period.[10]

We therefore focus upon the key issue in this case, which is whether any rule 309 time tacking can be claimed. Taxpayer argues no time may be added unless the AAB gives written notice identifying the "controlling litigation" as required by rule 309. Since no notice was given here, taxpayer

---

[8]All rule references are to the Real Property Tax Rules unless otherwise specified.

[9]The pertinent provisions of rule 309 provide that the decision must be made within two years (rule 309(b)), and that failure to render the decision within two years requires the taxpayer's opinion be enrolled except when, among other things, "controlling litigation" is pending (rule 309(c)(4)). Rule 309(d) then provides: "The applicant shall not be denied a timely hearing and determination . . . by reason of . . . [the controlling litigation exception] unless, within two years of the date of the application, the Board gives the applicant written notice of such denial. The notice shall indicate the basis for the denial and inform the applicant of his right to protest the denial at the time of the hearing on his application. When a hearing is postponed or not scheduled because controlling litigation is pending, the notice to the applicant shall identify the controlling litigation by the name of the case, the court number or docket number of the case, and the court in which the litigation is pending. If a hearing is postponed because controlling litigation is pending, the hearing must be held and a final determination made within a period of two years after the application is filed, excluding the period of time between the notice of pending litigation and the date the litigation becomes final."

[10]We assume that in the ordinary case a rule 309 "pending litigation" notice would pertain to some unrelated pending litigation in a trial or appellate court involving the same issue raised by the taxpayer's reassessment application. The rule could surely, however, also be invoked where judicial proceedings arising out of the very reassessment application subject to the two-year period made continuance of administrative proceedings inappropriate, as presumably could have been argued in this case had the rule 309 notice been given.

claims no time may be added. Our review of the purpose of rule 309, as well as its specific terminology, forces the conclusion that taxpayer is correct, and that no tacking is permissible in this case since no notice was given.

Looking first to the language of rule 309, we note that it is consistently mandatory. The taxpayer "shall not" be denied a timely hearing absent written notice; the notice "shall" inform the applicant of his right to protest and the basis thereon; and the notice "shall" identify the controlling litigation with specificity. The use of mandatory language persuades that the obligation to give notice, protecting as it does the citizen's interest in receiving notice and opportunity to protest, is mandatory rather than directory. (*In re Lamonica H.* (1990) 220 Cal.App.3d 634, 642-644 [270 Cal.Rptr. 60].)

Moreover, written notice is required because it *defines and measures* the "tolling period." Controlling litigation does *not* provide the AAB an indefinite or open-ended extension to decide the application, but instead permits only a *finite* period to be "tacked" to the two-year period. Rule 309 specifies: "If a hearing is postponed because controlling litigation is pending, the hearing must be held and a final determination made within a period of two years after the application is filed, *excluding the period of time between the notice of pending litigation and the date the litigation becomes final.*" (Italics added.)

As is apparent from the highlighted language, the "tacked" period is measured not from the time the litigation was filed, or served, or answered, etc., but from the time of giving of the written notice. Without formal notice the taxpayer has no sure means of knowing how much additional time is to be added to the two-year period.

It seems apparent to us that the provisions of rule 309 were designed to provide reasonable "due process" protection for the taxpayer. The taxpayer's statutory entitlement to a decision within two years is subject to an ambiguous exception under section 1604: that there will be tacked to the two-year period a time during which "controlling litigation" is pending. The taxpayer has no means, however, of knowing when and for how long this is occurring absent some formal notice from the AAB. Rule 309 provides the details of the notice requirement which accord due process to the taxpayer. If the AAB decides it is delaying action because of pending litigation, it must give the taxpayer formal notice. By specifying the particular means by which the AAB may invoke the statutory exception to the running of the two-year period, the rule strongly implies that absent its invocation no added time will be permitted.

V., VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VII. *Conclusion*

We conclude the two-year limitations period provided by section 1604 expired in September 1989, and hence the decision of the AAB was untimely. However, because there is some evidence from which a court could conclude the parties entered into a settlement agreement, the trial court must determine the issue of the existence and enforceability of the alleged settlement.

VIII. *Disposition*

The judgment is reversed and the case remanded for retrial. Each party shall bear its own costs on appeal.

Nares, J., and Thompson, J.,* concurred.

A petition for a rehearing was denied February 23, 1994, and the petition of defendant and appellant for review by the Supreme Court was denied April 28, 1994. Baxter, J., was of the opinion that the petition should be granted.

---

*See footnote 1, *ante*, page 152.
   *Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.