[Civ. No. 14034. Third Dist. Feb. 22, 1974.]

GEORGIA-PACIFIC CORPORATION,
Plaintiff and Appellant, v.
COUNTY OF BUTTE, Defendant and Appellant.

462

## COUNSEL

Thelen, Marrin, Johnson & Bridges, Paul R. Haerle and Jon T. Anderson for Plaintiff and Appellant.

Daniel V. Blackstock, County Counsel, for Defendant and Appellant.

Marshall S. Mayer as Amicus Curiae on behalf of Defendant and Appellant.

## OPINION

**RICHARDSON, P. J.**—Defendant County of Butte appeals from the judgment of the trial court which held among other things that the formula used by defendant in assessing timberlands of plaintiff Georgia-Pacific Corporation, now Louisiana-Pacific Corporation, was illegal and which directed a new hearing to be conducted by defendant's Assessment Appeals Board. Plaintiff, in turn, has filed a cross-appeal from that portion of the judgment which directs that a complete rehearing be held on plaintiff's application for a reduction of the assessment on its timberlands.

Defendant makes multiple contentions of trial court error, both procedural and substantive, which contentions may be summarized:

(1) A general assertion that substantial evidence supports the decision of the Assessment Appeals Board (hereinafter the Board) as to timberland valuation and particularly that article XIII, section 12¾ of the California Constitution was not violated by the method of appraisal utilized by the assessor and approved by the Board.

(2) Substantial evidence sustained the valuation by the Board of plaintiff's recreation lands.

(3) The introduction of additional evidence before the trial court constituted error, and in that connection appellate review is controlled by the substantial evidence rather than weight of the evidence test.

(4) The exclusion by the Board of a portion of the testimony of the witness Oslund did not constitute error.

(5) There was no violation by the Board of rule 326 of the State Board of Equalization which prohibits the Board from reconsidering or rehearing an application for reduction in assessment.

(6) Plaintiff failed to comply with Revenue and Taxation Code sections 5137 and 5139.

Our review of defendant's arguments in a slightly different sequence, as well as that of plaintiff on its cross-appeal, reveals that they lack merit and we will affirm the judgment of the trial court in its entirety.

We trace the procedural history of the case.

Plaintiff brought its action against defendant to recover $65,227.13 in property taxes paid by plaintiff to defendant under protest in December of 1970 and April 1971. These payments represented county property taxes for the tax fiscal year 1970-1971 levied and assessed against 21,469 acres of land situate in Butte County of which 19,959 were determined to be "timberland" and 1,510 were "recreation land." Defendant's assessor concluded that the full cash values and assessed values of plaintiff's "bare land" (defined at trial as land exclusive of standing timber thereon) as of March 1, 1970, the lien date, were $4,506,820 and $1,126,705 respectively. Plaintiff's figures for the same values as of the lien date were $753,-695 and $188,424 respectively.

On August 25, 1970, plaintiff filed with the Butte County Board of Supervisors, as the county board of equalization, a verified application for reduction in assessment pursuant to Revenue and Taxation Code section 1607. In its application, plaintiff did not contest the assessor's valuation of the mature timber subject to taxation standing on the property in question, which timber was separately assessed and the taxes on which were separately paid. On December 8 and 9, 1970, defendant, through its Board of Assessment Appeals, conducted a hearing on plaintiff's application during which it declined to hear the testimony of a witness, Robert Oslund, offered by plaintiff. Thereafter on December 10, 1970, and on April 8, 1971, plaintiff paid under written protest first and second installments of the taxes in the amounts previously indicated. On April 12, 1971 plaintiff forwarded to defendant a letter in further amplification of its protest. On January 25, 1971, defendant's Board of Assessment Appeals issued its decision on the application for reduction and on February 24, 1971, the Board filed an amendment to its findings of fact and decision. The amended findings of fact and decision stated that the property in question was encompassed

within three categories, namely, ''Forest Land, Forest-Recreation land, and non productive rubble land.'' Additionally, the forest land was defined as land the highest and best use of which was for timber production. Forest recreation land was land the highest and best use of which was for forest recreational homesite properties.

The findings of fact and decision, both in initial and amended form, essentially rejected plaintiff's contention that in determining the full cash value of plaintiff's bare land, defendant, by utilizing the so-called "income analysis" or "capitalization" formula, violated a constitutional provision specifically exempting immature growing timber. The amended findings further declared "that the applicant has presented no factual basis to justify a reduction in said land values below that value found by the board," and added that "if this board has jurisdiction to decide issues of law, the method used by the assessor to assess land used for timber growing purposes, to wit, an income analysis based on the productive capacity of said lands, does not, as a matter of law, constitute double taxation nor does it deny the applicant the benefits of Article XIII, section 12¾ of the California Constitution." The Board then concluded the full cash values and assessed values found and established by the defendant's assessor were "supported and established by the weight of the evidence produced at the hearing. . ."

On June 9, 1971, plaintiff filed the present action. Its complaint embraces four causes of action. The first, after reciting the procedural history of the dispute, concludes that the assessments and levy of taxes by defendant are unlawful as a tax on property exempt from taxation under the State Constitution, are not supported by the weight of the evidence presented to the assessment review board as to both timberland and recreation land, and as to both kinds of properties lack substantial supporting evidence. The second cause of action challenges the amendment by the Board of its findings of fact and decision as violative of rule 326 of the State Board of Equalization. Rule 326 provides that "[t]he decision of the board upon an application is final. The board shall not reconsider or rehear an application." The third cause of action asserts arbitrary, capricious and unreasonable procedures by defendant which effectively prevented plaintiff from presenting relevant material evidence and which, accordingly, did not comport with procedural due process. The fourth cause of action specifically challenges defendant's method of valuation as violative of the tax exemption defined in article XIII, section 12¾ of the California Constitution. The prayer of the complaint seeks a judicial declaration that the assessments and collections of the taxes in question by defendant were unconstitutional and further seeks recovery of specific sums paid to defendant by plaintiff under protest.

After a court trial, judgment was rendered for the plaintiff. Defendant, through its Board, was ordered to conduct a new hearing and specifically to refrain from employing the capitalization formula previously used because it violated a specific constitutional exemption and constituted double taxation.

In considering the various contentions, we treat initially the central and pivotal issue, namely, defendant's method of valuation of plaintiff's timberlands. We will uphold the trial court's resolution of this issue requiring a new hearing by the defendant's Board. For the guidance of the Board, parties and counsel, we thereafter consider several collateral issues raised by the parties.

### 1. *Valuation of the Timberlands.*

Defendant's method of ascertaining the full cash value and the assessed value of plaintiff's timberlands is the primary issue before us. Most of the attention of the parties at all stages of these proceedings has been directed to an analysis of the technique used by defendant which variously has been described as "The Capitalization of the Value of Average Annual Growth," or the "Capitalized Income Approach." For purposes of our discussion, we utilize the latter term. Its technical aspects are more fully described in an article entitled "Appraisal of Timberland Through Capitalization of the Value of Average Annual Growth" by Edwin E. Brown, assistant assessor of defendant county, appearing in the July 1971 Assessor's Journal. The clerk's augmented transcript contains the article as well as two written critical responses, one by John A. Zivnuska, dean, school of forestry and conservation, University of California, Berkeley and the other by plaintiff's principal witness Dr. Dennis E. Teeguarden, associate professor and assistant dean of the latter school.

The capitalized income approach was utilized because of the claimed scarcity of comparable sales information on large acreages of timberlands in Butte County. Since there apparently has been an adequate number of sales of medium sized and smaller pieces of property, the assessor in such instances utilized the more traditional "comparable sales" approach. Present Board of Equalization practice mandates use of the "comparative sales" approach when possible. (State Board of Equalization rule 41(d).)

Under the capitalized income approach, timberland is likened to general agricultural land and the method may be generally summarized: the goal is bare land value; the index of value of timberland must consider the value of timber grown on the land; when a timberland owner has established a sustained yield forest (i.e. land on which growing trees reach a size and

condition of harvest each year), value of the timberland may be determined by capitalizing the annual growth; an "income stream" is projected for the land in question based upon the anticipated annual growth rate of all the standing timber; the "expected future yield" to the investment unit— the land with timber on it—is capitalized, the product being the value of the capital asset. In short, the value of the annual growth is the measure of the land's annual income which, when capitalized, gives a bare land value for the timberland. The approach may be stated somewhat differently. A growth rate per acre is estimated, utilizing yield tables, growth plots and site index information, which is transposed into dollars based on a current timber market figure; a deduction is made for management costs and the remainder is capitalized at a fixed percentage (in our case 10.5 percent) and the result is an estimated dollar figure per acre. This is assumed to be the market or cash value of the land upon which the assessed value of the timberland is ascertained or calculated.

Plaintiff contends, however, that what is being capitalized under this approach—the "economic unit"—is the land *and* the growing timber. At this point, the formula must be squared with a constitutional limitation contained in article XIII, section 12¾ which, in relevant part, reads: ". . . all immature forest trees which have been planted on lands not previously bearing merchantable timber, or planted or of natural growth, upon lands from which the merchantable original growth timber stand to the extent of 70 percent of all trees over 16 inches in diameter has been removed, shall be exempt from taxation, and nothing in this article shall be construed as subjecting such trees and grapevine and forest trees to taxation; provided, that forest trees or timber shall be considered mature for the purpose of this act at such time, after 40 years from the time of planting or removal of the original timber as above provided, as a board consisting of a representative from the State Board of Forestry, a representative from the State Board of Equalization and the county assessor of the county in which the timber is located, shall by a majority thereof so determine."

■ Any formulation, accordingly, of value for tax purposes which includes as an essential element or ingredient the value of immature growing timber, runs afoul of the constitutional exemption and must be invalidated.

■ Our review of the record persuades us of the soundness of the trial court's view that: "The full cash value so determined by the Assessment Appeals Board for plaintiff's bare land classified as timberland necessarily included value attributable to an assumed volume of standing timber

needed to produce the assumed average yearly income, the value of which was capitalized by the board to determine said full cash value." The court concluded that such a procedure violated article XIII, section 12¾.

It will be observed that the process of capitalizing the "income stream" from the subject property necessarily includes the factoring into the formula of the then standing trees, both mature and immature, since to produce the "stream" requires, of course, not only the land but a continued accretion, in annual increments, of trees reaching maturity. Conceptually, the "income stream," within the context herein considered, has specific economic characteristics including a steady annual return from a timber harvest. It thus becomes apparent that utilization of the income approach necessarily contemplates the economic factor not only of existing mature trees but of trees growing toward maturity to assure the continuity of the projected income stream upon which the income formulation is based. Yet the Constitution specifically exempts from taxation such trees growing toward maturity. There thus results a "built in" illegality in the formulation.

The problems inhering in the approach have been well understood among appraisers as evidenced by the following in the Assessor's Handbook ("The Appraisal of Timber Property") of the State Board of Equalization (1965) section 310.13 which discusses the valuation of timber under an income capitalization approach in the following language: " 'The third value indicator [of land] may be estimated from capitalizing the net income expected to be derived from the land. Net income for capitalization attributable to timber would be that based upon the average net annual growth per acre. *This capitalized value is attributable to land and timber, and a timber value must be extracted to derive a bare land value.*' " (Italics added; see also Cal. Admin. Code, tit. 18, § 52.) Another expression of the necessary limitations on the method appears in the 1966 Board of Equalization Assessor's Handbook which, in its conclusion as to the capitalization of income, used the following language: "The income approach is a good tool for the appraiser but it must be used with discrimination. If the property to be appraised meets the assumptions of the income approach perfectly, then accurate income and expense forecasts, remaining economic life estimates, and the selection of the proper capitalization rate and method automatically produce a good answer. The answer is market value provided the appraiser's selections of these items coincides with those of successful bidders for property in the market. However, in real life all these estimates are matters about which there is some doubt. Knowledge of these facts should make the appraiser fully aware of the limitations of the tool and consequently better able to make intelligent use of it." (§ 501-81.)

In addition to the constitutional impediment above noted, an income capitalization approach must accommodate to certain economic realities. The bare land without the trees produces no actual cash income upon which to project an income stream. Defendant nonetheless asserts that the tax, under the "income stream" concept, is based upon the "capacity" or the "potential" of the land to produce timber. Regardless of how considered, the end result of the approach is an amalgam of two necessary ingredients, two economic components producing the income, the bare land and the trees growing thereon, some of which trees may be constitutionally exempt and some of which may not. In such a situation, as we have previously noted within a different context: "Prospective net income is frequently attributable to a combination of exempt and taxable assets. . . . Such a combination of elements may call for capitalizing imputed rather than actual net income." (*County of Amador* v. *State Board of Equalization* (1966) 240 Cal.App.2d 205, 218 [49 Cal.Rptr. 448].) ▓ It is clear that the economic potential of property may be considered in determining the taxable valuation of property. A carefully conceived formula which fully respects the constitutional exemption would not be invalid. One which has been suggested for timberland on which there is growth of young maturing trees is to ascertain the full value of the land with the growing trees thereon, allocate a separate value to the land and to the growing trees and then apply the exemption. (Assessor's Handbook, "The Appraisal of Timber Property" (1965) §§ 330.35-330.38; see also Ehrman & Flavin, Taxing Cal. Property (1967), p. 329.) We do not suggest that this is the only permissible method, but we do emphasize that whether the approach be by the more traditional means or by a capitalization of income, the constitutional exemption must be clearly recognized and applied.

▓ Finally, in addition to the necessary inclusion of exempt trees which is present in the income capitalization method applied by defendant, as we have noted, as to certain parcels defendant added a tax on the mature trees on the timberland. Plaintiff has not challenged such a tax which is on non-exempt growth. However, when the uncontested value of taxable mature trees is added to the value previously determined by the formula, a double taxation results which is expressly forbidden by the provisions of Revenue and Taxation Code section 102.

For the foregoing reasons, we conclude that defendant's method of appraisal of plaintiff's timberlands was invalid under the California Constitution and applicable state law, and that the trial court was correct in so holding.

## 2. *Valuation of Recreation Lands.*

Defendant challenges the trial court's consideration of defendant's method of valuation of recreation lands, contending that there was substantial evidence before the Board to sustain its valuation of such property and that, accordingly, its action must be sustained. (*A. F. Gilmore Co.* v. *County of Los Angeles* (1960) 186 Cal.App.2d 471, 476 [9 Cal.Rptr. 67].)

■ As previously noted, the trial court specifically found as follows: "The full cash value determined by the Assessment Appeals Board for plaintiff's bare land classified as recreational land failed to take account of differences between the sizes of the parcels claimed to be comparable and the sizes of plaintiff's parcels of recreational land." Revenue and Taxation Code section 402.5 specifically refers to the size of the property as being one of the elements for consideration in determining valuation of property by comparison with sales of other property. (See also Ehrman, *Administrative Appeal and Judicial Review of Property Tax Assessments in California—The New Look,* 22 Hastings L.J. 1, 11.)

There is nothing in the record of the hearing before the Board to indicate that the assessor utilized parcel size in determining value. It is well established that in reviewing evidence conflicts are to be resolved in favor of respondent and all legitimate and reasonable inferences indulged to uphold the determination of the trier of fact whether judge or jury. Where varying inferences can be reasonably deduced from the facts, we lack power to substitute our deductions for those of the trial court. (*Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 75 [64 Cal.Rptr. 785, 435 P.2d 553].) We decline to overturn the findings of the experienced and able trial judge on the record before us.

## 3. *Admission of Additional Evidence at Trial and Scope of Review.*

We consider two contentions of defendant closely related but separately asserted. At pretrial conference, counsel for plaintiff expressed a desire to present at trial certain oral testimony of no more than two expert witnesses additional to that presented before the Board. The stated purpose of the testimony was to establish "that the method of valuation used by the assessment appeals board and the assessor to value plaintiff's timberland included in the value determined value attributable to immature timber." Defendant objected to the proposal, contending the record before the trial court should be limited to the transcript of testimony before the Board. The

matter was briefed and the trial court granted the motion permitting the introduction of the testimony of no more than two witnesses bearing on the issue of law presented, namely, the method of valuation utilized by defendant. The plaintiff produced as its only additional witness Dean Tee-guarden, as above noted, who gave extensive testimony on his analysis of defendant's capitalized income approach.

Both parties concede that the general rule is: "The duty of determining the value of the property and the fairness of the assessment is confided to the appropriate county board of equalization. Furthermore, in discharging this duty, the board's determination upon the merits of the controversy is conclusive; the taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property. (*Universal Consol. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746]; *Eastern-Columbia, Inc.* v. *County of Los Angeles,* 70 Cal.App.2d 497, 500 [161 P.2d 407].) The question presented to the superior court in such an action is whether there was evidence of sufficient substantiality before the board to justify the finding (*Kaiser Co.* v. *Reid,* 30 Cal.2d 610, 626 [184 P.2d 879]), and in the absence of fraud or malicious or arbitrary use of its powers the board is the sole judge of questions of fact and of the values of property. (*Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164, 170 [121 P. 384, 9 A.L.R. 1277].)" (*Bank of America* v. *Mundo* (1951) 37 Cal.2d 1, 5 [229 P.2d 345].) In the usual assessment contest, the sole evidence before the superior court will consist of a transcript of the proceedings before the Board acting in the administrative proceeding. (*Hunt-Wesson Foods, Inc.* v. *County of Stanislaus* (1969) 273 Cal.App.2d 92, 94 [77 Cal.Rptr. 832]; *Campbell Chain Co.* v. *County of Alameda* (1970) 12 Cal.App.3d 248, 253 [90 Cal.Rptr. 501].)

■ Nonetheless, there is a recognized exception to the foregoing general rule which exception permits courts an avenue of narrow inquiry. This exception was expressed by us in *County of Amador* v. *State Board of Equalization, supra,* at p. 216: "In reviewing valuation decisions reached by the State Board of Equalization under article XIII, section 1, the courts have adopted the same criteria prevailing when actions of local boards of equalization are under judicial review. The board's valuation figure and the method of valuation employed by it are reviewable only for arbitrariness, abuse of discretion or failure to follow the standards prescribed by law. [Citations.] However limited, judicial review extends to (a) the valuation figure found by the board of equalization and (b) its method of valuation. [Citations.] If a board of equalization is called upon for a decision of law, the taxpayer has recourse to the courts for a determination of that

question. (*Flying Tiger Line, Inc.* v. *County of Los Angeles* (1958) 51 Cal.2d 314, 322 [333 P.2d 323].)" In *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 723-724 [96 Cal.Rptr. 379], we expressed the principle in the following manner: ". . . when a board of equalization purports to decide a question of law, resort may be had to the courts for determination of that question."

We have noted above that the central issue presented to the court was whether the method of valuation employed by the assessor and approved by the Board denied plaintiff a constitutional exemption from taxation. In this contention, the Board in its decision, as we have seen, stated that if it had power to decide legal issues the income approach violated neither the constitutional exemption nor the statute prohibiting double taxation. The Board clearly, albeit with some hesitancy, purported to decide a question of law. Plaintiff's principal challenge is directed at the method, the technique, the manner of the valuation of defendant's assessor. This presents a legal issue, the judicial review of which is within the province of the trial court. We find no basis for holding that the trial court abused its discretion in permitting the testimony of an additional witness limited to the specific legal issue involved.

Defendant contends that the proper rule of review by the trial court required the application of substantial evidence as opposed to the weight of the evidence test. (*Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d at p. 723; *Maywood Mut. Water Co.* v. *County of Los Angeles* (1970) 12 Cal.App.3d 957, 960-961 [91 Cal.Rptr. 206]; see also Cal. Const., art. XIII, §§ 9, 9.5.) Defendant asserts that the trial court, however, weighed the evidence submitted by defendant, particularly that of the testimony of the deputy assessor, Mr. Donati, and the appraisal method used by the assessor, and that the trial court simply substituted its judgment for that of the Board.

Our analysis of the procedures before the Board and before the trial court suggests that there are two separate issues which, while interrelated, nonetheless require continued separate identification. One affects timberland and the other recreation land. First, is the method of valuation applied by defendant to plaintiff's timberlands which essentially presents a question of law for decision by the court and which invokes the various considerations to which we previously have adverted. This judicial inquiry is pursued independent of and apart from the decision of the Board and unrestricted by any consideration of the scope of review. (*Board of Supervisors* v. *Archer, supra,* 18 Cal.App.3d at pp. 724-725; see also *Sacramento Mun. Util. Dist.* v. *County of El Dorado* (1970) 5 Cal.App.3d 26, 31 [84 Cal. Rptr. 748].)

Second, is the issue of the measure or quantum of evidence before the Board to support the Board's determination of the value of plaintiff's recreation lands. This consideration involves the scope of review. As to this issue, one leading authority (Ehrman & Flavin, Taxing Cal. Property (1973 Supp.) § 498 at pp. 176-177.), finds significance in the addition, in 1968, of the following language to Revenue and Taxation Code section 1605.5; "At the hearing the final determinations by the board shall be supported by the weight of the evidence." It is suggested that this change constitutes a directive to the reviewing courts to reweigh the evidence before the Board; that any other interpretation renders the addition of 1605.5 mere surplusage; and that in the words of the cited authority "[i]f the statutory change has indeed opened the door to judicial review of the evidence presented at an equalization hearing, the taxpayer has won a significant victory." We have also noted the pendency on appeal of two superior court cases on the point each expressing conflicting views: Hunt-Wesson Foods Inc. v. Alameda County, Alameda County Superior Court No. 373096 and Hunt-Wesson Foods Inc. v. Yolo County, Yolo County Superior Court No. 24600.

We do not, however, pursue the inquiry as to the proper scope of review for we find no indication in the record that the trial court applied a weight of the evidence test. Neither the trial court's opinion nor the findings of fact and conclusions of law indicates that the court rejected the substantial evidence test as to the recreation lands. ■ The only evidentiary support asserted by defendant for its conclusion that the trial court reweighed the evidence is the court's reference in its opinion to its determination that the Board in treating the recreation land "ignored differences in parcel sizes." Such reference furnishes no support for the conclusion that the trial court applied a particular evidentiary standard, nor is one necessarily inferred from the above quoted reference. Defendant points to nothing in the record to show that the court erred in finding that the Board's conclusion with regard to the recreation lands was not supported by the evidence. Stated differently, the trial court's determination that the Board's treatment of the recreation land lacked evidentiary support is amply sustained by the record. (Cf. *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362]; *Schulz* v. *Wulfing* (1967) 251 Cal. App.2d 776 [60 Cal.Rptr. 53].)

4. *Testimony of the Witness Oslund.*

■ At the hearing before the Board, plaintiff unsuccessfully attempted to present the testimony of a Mr. Oslund, property tax manager for plaintiff.

Plaintiff was allowed to make an offer of proof that Oslund would testify that ". . . the formula [used by defendant] is improper in that it is the one used to estimate the value of the land plus the value of the timber contained in it." The Board sustained defendant's objection to the admission of the testimony. The ruling was erroneous. The critical point in the proceeding, as we have previously discussed at length, involved a determination of whether or not defendant's assessor was including exempt trees in his valuation. The evidence of Mr. Oslund, bearing, as it did, on the propriety of the method used by the assessor, should have been before the Board. (Cf. *Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 988-989 [88 Cal.Rptr. 166, 471 P.2d 966]; see also 2 Davis, Administrative Law, §§ 14.01-14.02.) The proposed testimony was relevant. (See Evid. Code, § 210.)

### 5. *The Applicability of Rule 326 of the State Board of Equalization.*

Defendant contends that rule 326 of the State Board of Equalization was not violated. We agree. The trial court, while noting the contention, did not specifically rule on it. As we have noted, rule 326 prohibits the Board from reconsidering or rehearing an application once its decision is final. In this connection, the Board, after filing its original findings of fact and decision, filed an amendment thereto by adding the values of taxable timber, which were not in dispute. The amendment merely corrected an oversight and clerical error by the Board. In so acting, the Board did not either "reconsider or rehear" the application within the technical meaning of rule 326. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 63, pp. 3224-3225.) The trial court did not hold otherwise. Assuming, for purposes of discussion, the application of the section to the defendant's Assessment Appeals Board we find no basis for concluding that the trial court's treatment of rule 326 constituted reversible error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

### 6. *Plaintiff's Compliance with the Revenue and Taxation Code.*

Defendant contends that in making its payment of taxes under protest, plaintiff failed to comply with the requirements of sections 5137 and 5139 of the Revenue and Taxation Code. Section 5136 states that when a property owner pays his property taxes under protest, his payment is not voluntary. Section 5137 requires that: "The protest shall be in writing, specifying:

"(a) . . . . . . . . . . . . .

"(b) The grounds on which the claim is founded."

Section 5139 provides that the action brought under 5138 to recover taxes paid under protest may be brought only: "(a) As to the portion of the assessment claimed to be void. (b) On the grounds specified in the protest. . . ."

 As previously noted, plaintiff sent letters of protest with its payments of taxes, on December 10, 1970, and on April 8, 1971. On April 12, 1971, plaintiff forwarded to defendant a letter amplifying the grounds upon which the protest was founded. Defendant contends the letter of April 12 was not timely filed and that the letters accompanying the payments of December 10, 1970 and April 8, 1971, did not describe with sufficient specificity all the grounds upon which the case was ultimately tried and decided upon by the trial court, thus lacking conformity with sections 5137 and 5139. We find no merit in the contention. Defendant cites no authority nor have we found any which supports the defendant's assertion. The relevant code sections contain no language which prevents consideration of the April 12 letter as part of the formal protest. (See generally *Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726, 732 [108 P.2d 443].) Defendant neither claims nor can it show surprise, confusion, or prejudice from the receipt of the letters in question. Further, support of defendant's position, if carried to its logical conclusion, would require the taxpayer in advance to predict the theories to be asserted in a subsequent superior court proceeding before the facts developed in the administrative hearing or the decision of the Board became known. Such a requirement is consistent neither with logic nor essential fairness in tax assessment and collection practices. Plaintiff substantially complied with the two sections in question.

### 7. *Cross-appeal.*

 Plaintiff in its brief by cross-appeal contends that the trial court erred in directing a complete rehearing on its application for reduction of assessment. The initial proposed judgment of the trial court directed the Board to convene forthwith "to determine anew, *on the existing record,* Georgia-Pacific's Application for Reduction in Assessment for the tax fiscal year 1970-1971" (italics added). Upon appropriate objection by defendant, the court struck the emphasized language. Plaintiff asserts that the return of the matter to the Butte County Assessment Appeals Board does not require a new full evidentiary rehearing. The contention lacks merit.

Plaintiff's challenge to the administrative procedure utilized by defendant

was and is a constitutional one. It insists that the Board should have heard from its witness Oslund. Finding as we do that the method of valuation utilized by defendant was and is unconstitutional, we cannot predict what more appropriate and proper method of valuation may be adopted by defendant to conform to constitutional requirements. Fairness to each of the parties demands a new determination consonant with law and with the views herein expressed. This requires a new hearing as directed by the trial court.

The judgment is affirmed with each party to bear its own costs.

Friedman, J., and Janes, J., concurred.

The petition of defendant and appellant for a hearing by the Supreme Court was denied April 17, 1974.