Filed 8/30/23 Certified for Publication 9/28/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>COUNTY OF LOS ANGELES,<br><br>    Defendant and Appellant. | B317513<br><br>(Los Angeles County Super. Ct. No.BC721604) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judge David J. Cowan. Reversed and Remanded.

Renne Public Law Group, Michael K. Slattery, Thomas G. Kelch, Ryan McGinley-Stempel; Dawyn R. Harrison, County Counsel, Peter M. Bollinger, Assistant County Counsel, and Drew M. Taylor, Deputy County Counsel; Thomas M. Peterson, for Defendant and Appellant.

McDermott Will & Emery, Charles J. Moll III, Marcy Jo Mandel, Jason D. Strabo, and Melvin B. Wu, for Plaintiff and Respondent.

_____

Respondent Paramount Pictures Corporation (Paramount) sought a refund of taxes paid on its personal property for the 2011 tax year.  The property was assessed a final value of $137,397,278.

Paramount first appealed to the Los Angeles County Assessment Appeals Board (the Board).  When property is assessed, a variety of methodological approaches can be used.  For personal property, the cost approach, which generally looks at the cost paid for the equipment less depreciation, is often used.  During the appeal before the Board, Paramount, like the County of Los Angeles Assessor (the Assessor), used the cost approach to value its personal property and agreed the Assessor used the correct tables for calculating basic depreciation.  Paramount's only contention was that it was entitled to further reduction for obsolescence beyond that which is included in normal depreciation.  Paramount contended the value of its property under the cost method was $71,700,000, estimating a total of 48% obsolescence.

As an alternative method of valuation, Paramount submitted a significantly lower appraisal using the income approach, which values property based upon the income it produces.  However, Paramount gave this alternate income approach valuation little weight in its final analysis,

2

combining it with its cost approach valuation through a reconciliation process to reach a final value of $69,700,000 for its personal property.

Following a hearing, the Board issued a 19-page written decision, agreeing with the valuation proposed by the Assessor and finding Paramount failed to carry its burden of demonstrating additional obsolescence.  In those findings, the Board also found Paramount's income approach valuation too unreliable to grant it any additional weight.  The Board noted the State Board of Equalization (SBE) guidelines indicate the income approach is extremely difficult for personal property valuation and found Paramount failed to isolate the income it made on its personal property from other components of its business operations.

Paramount appealed the Board's decision to the trial court.  Paramount alleged the Board's decision was "contrary to law and established appraisal methodologies" and "unsupported by substantial evidence."  Paramount more specifically alleged the Board:  (1) failed to issue adequate findings to explain how it arrived at its decision on various material points; (2) erroneously refused to consider one version of its income approach valuation; and (3) failed to adequately make deductions for obsolescence in the assessment.  The trial court bifurcated the first two issues from the third (deeming the third a factual question subject to substantial evidence review) and proceeded to hold a bench trial on the legal issues.

After allowing Paramount to present additional evidence through a new expert witness, the trial court found: (1) the Board committed a methodological error in excluding Paramount's initial income approach valuation and (2) the Board issued inadequate findings regarding the significance of Paramount's pre-lien and post-lien sales of personal property. The trial court remanded the matter to the Board for further proceedings. In a separate ruling, the trial court awarded Paramount attorney fees under Revenue and Taxation Code[1] § 1611.6, which allows a taxpayer to recover fees for services necessary to obtain proper findings from a county board. The County timely appealed both orders, and we consolidated both cases for appeal.

In this appeal, we reverse the trial court's decision, concluding the Board committed neither methodological error nor issued findings that were less than adequate within the meaning of section 1611.5. First, Paramount did not challenge the validity of the cost approach relied upon by the Assessor and Board, and it did not otherwise identify any legal error in the Board's rejection of its income approach valuation. Second, the hearing transcripts, in conjunction with the Board's written findings, adequately disclose its rulings and findings on the pre-lien and post-sales data. In light of our disposition, we also vacate the court's attorney fees order. We remand the matter so the

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise noted.

4

trial court may consider the question of whether substantial evidence supports the Board's finding that Paramount failed to establish additional obsolescence.

## BACKGROUND

### A.     The Framework for Tax Refunds

When a taxpayer seeks to challenge the assessment of its property, it may petition the Board for a reduction. "'Although a local assessment appeals board decision arises from an administrative hearing process, the mechanism for seeking judicial review of the decision "'is significantly different from that of other administrative agency decisions. Ordinarily, the aggrieved taxpayer's remedy is not to seek administrative mandate pursuant to Code of Civil Procedure section 1094.5, but to pay the tax and file suit in superior court for a refund.'"'" (*Fisher v. County of Orange* (2022) 82 Cal.App.5th 39, 51; accord, *William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 10-11.)

Property subject to taxation must be assessed at its full value, which is defined as its full cash value or fair market value. (Rev. & Tax. Code, §§ 110, 110.5, 401; *Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 726 (*Sky River*).) The determination of fair market value is governed and guided by two sources. (*Torres v. San Francisco Assessment Appeals Bd. No. 1* (2023) 89 Cal.App.5th 894, 899 (*Torres*).) The first consists of State Board regulations referred to as the "Property Tax Rules," which can be found

5

in the California Code of Regulations, title 18.  These regulations "have the force and effect of law."  (*Prudential Ins. Co. v. City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1152.)  The second consists of handbooks issued by the State Board for use by assessors.  (*Torres, supra*, at pp. 899-900.)  """Although assessors' handbooks are not regulations and do not possess the force of law, they … have been relied upon and accorded great weight in interpreting valuation questions.""" (*Id.* at p. 900; *Sky River, supra*, at pp. 735-736.)[2]

Finally, there are three basic methods for calculating fair market value:  (1) the comparative sales or market data approach; (2) the reproduction or replacement cost approach (cost approach); and (3) the income approach. (*Torres, supra*, 89 Cal.App.5th at p. 900; *Sky River, supra,* 214 Cal.App.4th at p. 726.)[3]  Rule 4 governs the comparative sales approach to value.  Rule 6 governs the cost approach, and Rule 8

---

[2]      We take judicial notice of the Assessor's Handbook and the SBE's Guidelines for Substantiating Additional Obsolescence For Personal Property and Fixtures.  Portions of these materials were submitted by the parties during the administrative and trial court proceedings and were discussed by the parties and presiding officers. (*County of San Diego v. Assessment Appeals Bd. No 2* (1983) 140 Cal.App.3d 52, 59: *Hunt-Wesson Foods, Inc. v. County of Alameda* (1974) 41 Cal.App.3d 163, 180).

[3]      Although Rule 3 "lists five permissible valuation approaches (Cal. Code Regs., tit. 18, § 3), one is a variation of the comparative sales approach and two variations of the cost approach are listed separately; therefore, the 'five methods … in fact reduce themselves to the same basic three.'" (*Torres, supra*, 89 Cal.App.5th at p. 900, fn.1.)

6

governs the income approach. (Cal. Code Regs., tit. 18, §§ 3, 4, 6, 8; *Midstate Theatres, Inc. v. County of Stanislaus* (1976) 55 Cal.App.3d 864, 879 (*Midstate Theatres*) [so noting].)

**B.     The Property Assessment**

Paramount is the owner of personal property and fixtures (the Property) situated at the Paramount Studios lot on Marathon Street in the City of Los Angeles. On January 1, 2011, the Assessor valued the Property at $164,769,490 for tax purposes (the Assessment). Paramount then timely filed an Application for Changed Assessment with the Board.

**C.     The Assessment Appeal Before the Board**

On appeal, the parties agreed the Assessment erroneously included a double assessment for construction in progress costs (CIP), and the Assessor revised its valuation to $137,397,278 after removing the CIP.[4] To support the final valuation, the Assessor utilized the cost approach, which per property Tax Rule 6, consists of the acquisition cost of the property, less depreciation according to tables prepared by the State Board.

Paramount also presented a cost approach valuation and did not dispute the Assessor's base calculations under the SBE tables, but argued additional[5] reductions should be

---

[4]     Paramount objected to the Assessor's assertion that the double assessment of CIP was due to Paramount's misreporting of assets.

[5]     The Board of Equalization Tables for basic depreciation factor in a small amount of obsolescence that is included in the tables.

made for various forms of "obsolescence." To prove its case, Paramount presented evidence in support of factors identified or referenced in the SBE Handbook entitled, "Guidelines for Substantiating Additional Obsolescence for Personal Property and Fixtures." Paramount estimated 48% obsolescence, resulting in a fair market value indicator for the cost approach of $71,700,000.

Paramount also presented a valuation of its property using the income approach but ultimately gave it little weight. That is, while Paramount's income approach resulted in a valuation that was significantly below its cost approach ($51,400,000),[6] Paramount sought to reconcile the two approaches for a final combined valuation of $69,700,000, which was only slightly below its cost approach.

On March 22, 2018, in a written 19-page decision, the Board accepted the Assessor's revised value of $137,397,278 and rejected Paramount's various contentions seeking further reductions. The Board concluded Paramount "did not prove by a preponderance of the evidence that a reduction for functional, economic or 'additional' obsolescence [was] warranted."

---

[6] As indicated in the Board's findings, and reflected by the administrative record, the final income approach submitted by Paramount reflects a typed total of $51,400,000 on its exhibits, and Paramount testified to that total at the hearing, but one of the exhibits in the record has a handwritten correction to a total of $54,000,000. This difference has no impact on our decision.

The Board gave no weight to Paramount's income approach, finding this valuation too unreliable for several reasons, including Paramount's failure to isolate the income for its personal property, as required under Rule 8. The Board observed Paramount's equipment is offered with personnel to operate the equipment, but Paramount did not separate the income streams from these components of its operation. Paramount also failed to reliably separate its personal property income from its real property income, and its expenses were too generalized. The Board observed the Assessor's Handbook expressly cautions that the income approach has limited application to personal property and fixtures "because it is often extremely difficult to attribute an income stream directly to individual items of Personal Property and Fixtures."

Accordingly, the Board found in favor of the value recommended by the Assessor.

**D.    The Trial Court Refund Action**

On September 13, 2018, Paramount filed a Verified Complaint for Refund of Property Taxes against the County of Los Angeles to obtain a refund of the property taxes it paid. The Complaint alleged a single cause for refund of property taxes with numerous supporting allegations.

Paramount alleged the Board's decision was "contrary to law and established appraisal methodologies" and "unsupported by substantial evidence" because the Board, among other things, (1) failed to issue adequate findings to

9

explain how it arrived at its decision on various material points; (2) erroneously excluded certain evidence, including an initial version of Paramount's income approach valuation; and (3) failed to account for all obsolescence in the assessment.

The trial court bifurcated the first two issues from the third (deeming the third a question of substantial evidence review) and proceeded to hold a bench trial on the first phase.

After allowing Paramount to present testimony from a new expert witness, the trial court concluded:  (1) the Board committed a methodological error in excluding Paramount's initial income approach valuation and (2) the Board issued inadequate findings on two material points:  its reasons for excluding evidence of pre-lien sales, and its reasons for failing to accord any weight to admitted evidence of post-lien sales.  In light of its conclusions and decision, the court found it unnecessary to reach the (previously bifurcated) issue of whether substantial evidence supports the Board's determination, and instead remanded the matter to the Board for further proceedings on the issues identified in its decision.

In a separate hearing, the trial court considered and granted Paramount's motion for attorney fees under section 1611.6, in the amount of $233,120.00.  The County timely appealed from both orders, and we consolidated both cases into the instant appeal.

## DISCUSSION

### A. Standards of Review and Relevant Legal Principles

"In reviewing a property tax assessment, the court must presume the assessor properly performed his or her duty and that, [consequently], the assessment was both regularly and correctly made." (*Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 21; *California Minerals, L.P. v. County of Kern* (2007) 152 Cal.App.4th 1016, 1022 (*California Minerals*); Cal. Code Regs., tit. 18, § 321.)

When a taxpayer claims a valid valuation method was erroneously applied, "the court may overturn the assessment appeals board's decision only if there is no substantial evidence in the administrative record to support it." (*California Minerals, supra,* 152 Cal.App.4th at p. 1022.) However, if the taxpayer challenges the validity of the valuation method itself, the court is faced with a question of law subject to independent review. (*Id.* at p. 1022; *Maples v. Kern County Assessment Appeals Bd.* (2002) 103 Cal.App.4th 172, 178 (*Maples*).) The court must determine "'whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law.'" (*Ibid.*)

"In this regard we look not to whether another approach might also have been valid or yielded a more precise reflection of the property's value, but whether the method chosen was contrary to law. [citations.] 'The law

11

requires only that an assessor adopt and use a reasonable method — neither a trial court, nor this court, can reject a method found by the board to be reasonable merely because, in [its] nonexpert opinion, another method might have been better.'" (*County of Orange v. Orange County Assessment Appeals Bd.* (1993) 13 Cal.App.4th 524, 530; see also *Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 605-606 ["'When the assessor utilizes an approved valuation method, his [or her] factual findings and determinations of value based upon the appropriate assessment method are presumed to be correct and will be sustained if supported by substantial evidence'"].)

Finally, Section 1611.5 provides, in pertinent part, that the Board's "written findings of fact shall fairly disclose the board's determination of all material points raised by the party in his or her petition and at the hearing, including a statement of the method or methods of valuation used in appraising the property." The Board's findings need not "cover every evidentiary matter," nor be as thorough as "formal findings of fact, such was would be prepared by a court." (*Farr v. County of Nevada* (2010) 187 Cal.App.4th 669, 686; *McMillan v. American Gen. Fin. Corp.* (1976) 60 Cal.App.3d 175, 184.)

This court reviews the trial court's determination of legal issues, de novo, and any factual findings it makes for substantial evidence. (*People ex rel. Lockyer v. Shamrock Foods* Co. (2000) 24 Cal.4th 415, 432; *Benninghoff v.*

12

*Superior Court* (2006) 136 Cal.App.4th 61, 66.)  In light of the issues on appeal, our review is de novo.

**B.    The Board Used a Reasonable Valuation Method**

   1.    *Paramount Does Not Challenge The Valuation Method Used To Value Its Property*

According to the Assessor's Handbook, Section 504, "The cost approach . . . . is the method of valuation used most frequently to value personal property and business fixtures for assessment purposes because it lends itself to mass appraisal and is employed based on information provided on yearly property statements."  (*Assessor's Handbook*, *supra*, Assessment of Personal Property & Fixtures (Oct. 2002) p. 50, italics added.)[7]

Under Property Tax Rule 6(e):  "Reproduction or replacement cost shall be reduced by the amount that such cost is estimated to exceed the current value of the reproducible property by reason of physical deterioration, misplacement, over or under improvement, and other forms of depreciation or obsolescence."  (Cal. Code Regs., tit. 18, § 6, subdivision (e).)

Section 504 identifies the various types of depreciation as (1) physical depreciation ("wear and tear"); (2) functional obsolescence ("the loss of value in a property caused by the

---

[7]    Mass appraisal is "'the process of valuing a universe of properties as of a given date utilizing standard methodology, employing common data, and allowing for statistical testing.'"  (*Assessor's Handbook*, *supra*, p. 50, fn. 110.)

13

design of the property itself"); and (3) external or economic obsolescence ("loss in value resulting from adverse factors external to the property that decrease the desirability of the property"). (*Assessor's Handbook*, *supra*, at pp. 70-71.)

As previously indicated, Paramount agreed with the Assessor's base cost valuation of its personal property, including the depreciation calculated under the SBE tables but contended an additional reduction for obsolescence was warranted and relied on various measures of obsolescence identified under the cost approach method. (See *Torres*, *supra*, 89 Cal.App.5th at pp. 901-902 [discussing functional obsolescence as part of cost approach]; *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 837-838 [discussing external or economic obsolescence as part of cost approach].)

Although the parties agreed upon the use of the cost approach, the trial court nevertheless found methodological error, as a matter of law, based on the Board's rejection of Paramount's income approach. This was incorrect for the reasons we discuss below.

First, the cases cited by the trial court in support of its decision all involve challenges to the methodology (or the legality of its underlying assumptions) used by an appraiser or appeals board to reach its final valuation. (See *Bret Harte Inn v. County of San Francisco*, *supra*, at pp. 23-26 [methodology based solely upon the original acquisition cost of personal property, with an "arbitrary," across-the-board, 50% deduction for depreciation, was unreasonable]; *GTE*

14

*Sprint Communications Corp. v. County of Alameda* (1994) 26 Cal.App.4th 992, 999-1001, 1007 [methodology under which the full value of non-taxable intangible assets was subsumed, as a matter of law, in the value of tangible assets was improper]; *County of Stanislaus v. Assessment Appeals Bd.* (1989) 213 Cal.App.3d 1445, 1450 [County's challenge to Board's assumption that franchise rights were non-taxable, as underlying premise in its assessment of taxpayer's real and personal property, presented a question of law].)

Here, Paramount did not challenge the "chosen method" of the Assessor or the Board, nor did it identify any legal error underlying that approach. (See *Hunt-Wesson Foods, Inc. v. County of Alameda, supra,* 41 Cal.App.3d at p. 179 [observing taxpayer had not directed the court to "any authority which indicates the *particular method used by the assessor* in the case at bench was contrary to law or was at variance with any standards prescribed by the Legislature"], italics added.) Paramount's position resembles that of the plaintiff in *Dreyer's Grand Ice Cream, Inc. v. County of Kern*, *supra*, 218 Cal.App.4th 828. In that case, the parties agreed that the cost approach was the appropriate method to value plaintiff's personal property and equipment, and plaintiff did not dispute the assessor's adjustment for ordinary depreciation, but it sought an additional reduction for obsolescence. (*Id.* at p. 837.) After the tax board decided against it, plaintiff claimed the board used an incomplete valuation method by omitting a reduction for underutilization, a form of obsolescence, as required under

15

Property Tax rules. (*Id.* at p. 837.) The appellate court (affirming the trial court) disagreed: "The board found that the assessor carefully considered making the adjustment, but determined it was not warranted. Thus, the issue before the trial court was not one of law: Whether the cost method of valuation mandated making an underutilization adjustment in an appropriate case. Rather, the issue was one of fact: Whether, on the evidence presented, the board could conclude that plaintiff failed to satisfy its burden of proving an underutilization adjustment was appropriate," and the issue of fact was subject to the substantial evidence standard of review. (*Id.* at p. 838.)

Similarly here, the parties agreed that the cost approach was the appropriate method to value Paramount's personal property and that the cost approach provided for adjustments for obsolescence. Paramount made various arguments as to why an obsolescence adjustment should be made, but the Board found Paramount did not meet its burden of proof. This is not an issue of law. Paramount challenges the way in which the cost method was applied, and the results reached, which is subject to the substantial evidence standard of review.

      2.     *The Failure to Adopt - or Include - An Alternate Valuation Proffered by the Taxpayer, Is Not Methodological Error*

Second, and relatedly, Paramount not only presented the income approach as an *alternative* valuation method, but as a *secondary* valuation, giving it little weight in its final

mixed valuation.  However, the failure to adopt a valuation method preferred by a taxpayer, even if valid, is generally a matter within the Board's discretion.  (*Dressler v. County of Alpine* (1976) 64 Cal.App.3d 557, 571 [noting that of the valuation approaches enumerated in the State Board rules, "assessors have discretion to select the one or several appropriate to the particular property"]; *Chevron USA, Inc. v. County of Kern* (2014) 230 Cal.App.4th 1315, 1333 [method of valuation used is within sole discretion of Board, and Board may even consider "practical reasons" in adopting a particular valuation method]; *Trailer Train Co. v. State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 581-583 [Board's selection of particular method of valuation, including choice of combining methods, rests in Board's discretion]; *County of Orange v Orange County Assessment Appeals Bd., supra,* 13 Cal.App.4th at p. 530 [noting on review of tax board decision, courts "look not to whether another approach might also have been valid or yielded a more precise reflection of the property's value, but *whether the method chosen* was contrary to law"], italics added.)

Further, in its trial brief below, Paramount suggested the income approach was an "approved valuation method" for measuring obsolescence and cited to the SBE Guidelines for Measuring Additional Obsolescence in support of this suggestion.  However, the SBE Obsolescence Guidelines state clearly at the outset, "These Guidelines focus on quantifying additional obsolescence of personal property and fixtures *when using the cost* approach," and then refer to the

17

Assessor's Handbook Section 504 for any discussion of the income, or comparable sales, approaches. (Guidelines, *supra*, at p. 3, italics added.) This introductory statement in the Guidelines also makes clear that the three major value approaches (income, comparable sales, and cost) should generally be "carried out independently" of one another and "completed on the basis of market data supporting *that* approach." (Guidelines, at p. 3, italics added.)[8] Here, Paramount disregarded this instruction, mixing and matching approaches, using the income approach to justify an obsolescence adjustment to an assessment done using the cost approach. (See Section A, subsection 3, and Section C, *post*.)[9]

3. *The Board's Reasons for Rejecting Paramount's Income Approach Valuation Were Consistent With Applicable Rules and Regulations*

Third, the Board's reasons for rejecting Paramount's Income Approach valuation were consistent with the rules and regulations on the issue. (Cf. *Next Century Associates, LLC v. County of Los Angeles* (2018) 29 Cal.App.5th 713, 722

---

[8] In its responding brief, Paramount appears to recognize this point, stating "if both an income approach and a cost approach are used, they are still two different approaches even if they reach the same value."

[9] Paramount's Appraiser testified that because the income approach valuation came out far lower than the cost approach valuation, it indicates that there is substantial obsolescence "that needs to be applied in the cost approach. There's another check on it."

(*Next Century*) [whether Board followed applicable legal standards is a matter of law subject to judicial correction].)

As noted in the Board's written findings, the Assessor's Handbook recognizes that "*the income approach has limited application to personal property and fixtures because it is often extremely difficult to attribute an income stream directly to individual items of personal property and fixtures.*" The same page from the Assessor's handbook indicates that it nevertheless is sometimes possible to use the income approach to "estimate personal property as a residual amount. For example, the value of an entire manufacturing plant can be estimated using the income approach, with the value of the constituent personal property then estimated as a residual by subtracting out the (presumably) *known* values of any real property and other assets. (Assessor's Handbook, *supra*, at p. 85, italics added.)

In its initial presentation of the income approach, Paramount submitted an income appraisal assigning a value to its real property of approximately $90,400,000 and $50,900,000 to personal property, and no value to intangible property. The appraisal stated the conclusion was "based on an analysis of the relative earning of the three asset classes."[10]

---

[10] The Board periodically closed the proceedings to accommodate Paramount's request to keep some of its financial information confidential. In the trial court, the parties stipulated they would discuss appraisal values, but not specific income or expense information. The parties, however, also submitted exhibits containing
*(Fn. is continued on the next page.)*

19

After Paramount's appraiser testified to a real property value of $90,400,000, the Assessor objected, noting Paramount had, at the outset of the hearing, withdrawn its appeal from the enrolled value of its real property, which was about $271,000,000.  In other words, Paramount was neither appealing the assessment of its real property as being worth $271,000,000 nor was it seeking a refund for any taxes that it paid based on that assessment, yet it was now claiming the real property was worth one-third that amount.  The Assessor noted there is a presumption the enrolled value is correct and that Paramount's assumed valuation of its real property was "so way off" from that enrolled value that it should not be permitted as a reference point in its income analysis.  Paramount responded it was "not challenging the roll value of the real property" or asking the Board "to make any determination on the real property" and that it "did not want to get into real property issues at all" but was simply using the real property number as part of its allocation for the income approach.

The Board sustained the Assessor's objection and told Paramount it could either proceed with its cost approach or present its income approach "without any reference to the value of real property."  Paramount chose the latter option

several portions of the confidential hearing transcripts as reflective of the Board's reasoning or the parties' positions on certain points.  To the extent we reference any facts from confidential portions of the Board hearing, we do so for similar reasons.  (*Sager v. County of Yuba* (2007) 156 Cal.App.4th 1049, 1051.)

and later in the proceedings resubmitted its income approach. The revised income approach valued Paramount's personal property at approximately $51,400,000 (with a subsequent handwritten notation to $54,000,000). When the Assessor examined Paramount's expert on how he extracted the income for the personal property, he stated he allocated revenue for a few categories to personal property, then as to others, "[w]e sat down with Paramount, I think Paramount had four or five different employees in the room, and we went through line item by line item and discussed what it was and how it should be apportioned."[11]

In its written findings, the Board found Paramount could not isolate the income attributable to its personal property, as required by Rule 8, noting Paramount's lot "offers equipment and its personnel to operate the equipment, and thus the income and expenses would need to be segregated within the overall different components of the overall operation." The Board further found that Paramount had failed to "accurately segregate the income streams" for its personal property from its real property assets. The Board accordingly found Paramount's income approach "was not a credible method" to value its personal property.

---

[11] In presenting the revised income approach, Paramount's appraiser testified his final valuation of personal property in both the original and revised income approach were "very close" and "very similar" and thus he made no change in his final reconciled/combined total valuation of Paramount's cost & income methods.

21

The Board did not act contrary to the law in rejecting Paramount's income approach valuation using a property value that was one-third the enrolled value. (*Chevron USA, Inc. v. County of Kern, supra,* 230 Cal.App.4th at p. 1333 [failure to present independent evidence to Board challenging value or correctness of assessment forfeits subsequent challenge to that value in trial court]; see also *Mission Housing Development Co. v. City & County of San Francisco* (1997) 59 Cal.App.4th 55, 85-86 [assessor's selection of method not arbitrary where he had "significant concerns" regarding reliability of taxpayer's data].)

Moreover, Paramount's revised income approach valuation, like the first, was flawed in that it failed to reliably isolate the income attributable to personal property. The fact that Paramount itself gave very little weight to its income approach in its final analysis (both *before and after* revision) is indicative, if not corroborative, of the Board's decision. (See Assessor's Handbook, *supra*, at p. 85 [noting challenges in verifying income are attributable to personal property because personal property "is significantly influenced by business activity, personal services, sales or services directly related to the rented property . . . or other non-property factors"]; *Georgia-Pacific Corp. v. County of Butte* (1974) 37 Cal.App.3d 461, 470 [discussing limitations of income approach]; cf. *Next Century, supra,* 29 Cal.App.5th at p. 723 ["the Board has the power to disregard a valuation analysis it determines for good reason is unpersuasive, and

to reject expert testimony that is speculative, unsupported, or otherwise unpersuasive"].)

In short, there was no showing that a provision of law was violated by the Board's rejection of Paramount's income approach valuation.

## C. The Board's Findings Were Adequate and Complied with Section 1611.5

The trial court concluded the Board failed to issue adequate findings on why it found Paramount's "comparable sales" data did not support a further reduction for obsolescence. In so concluding, the trial court identified two pieces of evidence: (1) Paramount's pre-lien data, which the court recognized was excluded by the Board; and (2) Paramount's post-lien data, which was admitted by the Board but not expressly addressed in its written findings. The trial court concluded the Board failed to explain why it either excluded these items or found them unworthy of weight.[12] As explained below, the administrative record discloses adequate findings on these issues.

### 1. *Board's Rulings and Findings*

---

[12] Although the trial court's order initially states the findings were inadequate only as to post-lien sales (in light of the Board's exclusion of the pre-lien sales), the trial court's order subsequently suggests the Board's failure to consider or discuss both types of sales in its written decision was prejudicial error. We set out the Board's rulings on both types of sales.

We first note that in discussing the adequacy of the Board's findings on the two pieces of evidence at issue here, the trial court characterized the evidence as data involving "comparable sales," and Paramount argued in briefing before the trial court that "comparable sales" "are a strong indicator of the fair value of property."

As a preliminary matter, it is undisputed that Paramount utilized the cost approach, relied minimally on the income approach, but placed **no** *reliance* on the comparable sales approach to conduct the assessment. Indeed, in its final reconciliation page, Paramount expressly stated the comparable sales approach was not used because "it could not be fully developed." In its case before the Board, Paramount stated, "[t]here is an income approach and there is a cost approach. The Assessor has done a cost approach, solely a cost approach, but there is no comparable sales."

However, in its rebuttal case before the Board, Paramount sought to present a chart listing several sales of its equipment that took place prior to the January 1, 2011, lien date at issue, *i.e.*, before the date the assessor valued its personal property on the lot, as evidence that property suffered from obsolescence. The Assessor objected, noting Paramount had not relied on this information in its case-in-chief and the County had not discussed it in its rebuttal case. After Paramount's appraiser conceded he had neither discussed it in his appraisal nor sought to provide this information to the County in its exchange (discovery)

24

materials, the Board stated, "[W]e can't accept it" and sustained the objection.

The County also separately objected to evidence (contained in Exhibit X) listing five sales of Paramount's equipment after the January 1, 2011, lien date. The County pointed out these sales (from 2013 and 2014) were beyond the 90-day rule,[13] and there was no information regarding the circumstances of the sales, including the condition of the property.[14]

The Board noted because these sales were of items that were actually on the tax roll at the time of the assessment in this case, the "90 day rule doesn't apply." However, the Board understood the Assessor's objection as one of "relevance" given the sales were two or three years after the lien date in this case. The Board allowed evidence of the sales but made clear it would be given only the weight it deserved. Paramount's appraiser subsequently testified he did not use the post-lien sales to conclude "this is the value" of the subject property, but rather as a way to "confirm" his previous finding that there was obsolescence affecting the property.

---

[13]     Section 402.5 sets out various requirements for "valuing property by comparison with sales of other properties" including that any comparable sale is near in time and "[no] more than 90 days after the lien date." (§ 402.5; *Mission Housing Development Co. v. City & County of San Francisco, supra,* 59 Cal.App.4th at pp. 84-85)

[14]     Paramount's appraiser acknowledged he could not ascertain the condition of the property at the time of sale.

In its 19-page written findings, the Board noted Paramount submitted evidence of its post-lien date sales of its equipment in its procedural background, but it did not separately discuss this evidence in its "findings and decision" section.  The Board, however, concluded Paramount "did not prove by a preponderance of the evidence that a reduction for functional, economic or 'additional obsolescence' is warranted."

2.  *Analysis*

As previously indicated, Section 1611.5 provides, in pertinent part, that the Board's "written findings of fact shall fairly disclose the board's determination of all material points raised by the party in his or her petition" but the findings need not "cover every evidentiary matter."  (*Farr v. County of Nevada, supra*, 187 Cal.App.4th at p. 685; *McMillan v. American Gen. Fin. Corp.*, *supra*, 60 Cal.App.3d at p. 184.)  Rather, the findings need only "'enable the reviewing court to trace and examine the agency's mode of analysis.'" (*Midstate Theatres, supra*, 55 Cal.App.3d 864, 888; see also *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515-516.)  California courts have consistently recognized that in reviewing administrative findings, a court is not limited to the four corners of the findings themselves and may supplement these findings with relevant references or oral statements on the record.  (See *County of Amador v. State*

*Bd. of Equalization* (1966) 240 Cal.App.2d 205, 219; *Harris v. City of Costa Mesa* (1994) 25 Cal.App.4th 963, 971.)

Here, the Board's rulings and statements during the hearing demonstrate why it excluded pre-lien sales evidence, and that Paramount's evidence of sales made years after the lien date was, at best, deemed marginally relevant. Given this, the Board's failure to expressly analyze the post-lien sales in its written findings is unremarkable, while its ultimate conclusion that Paramount failed to establish its case of "functional, economic, or 'additional' obsolescence" by a preponderance of the evidence fairly subsumes the issue. (*Midstate Theatres, supra,* 55 Cal.App.3d at p. 888.)

## D. Attorney Fees Order

The trial court awarded Paramount all of its attorney fees relating to its tax refund action pursuant to section 1611.6, which awards a taxpayer his or her attorney fees where findings made by a tax board are so deficient "that a remand to the county board is ordered to secure reasonable compliance with the elements of findings required by Section 1611.5." (§ 1611.6)

In light of our disposition, this order is vacated.

## DISPOSITION

The judgment of the trial court is reversed, and the matter is remanded for the court to reach the (previously

bifurcated) issue of whether substantial evidence supports the Board's finding that respondent failed to establish a reduction for obsolescence was warranted. In light of our disposition, the trial court's award of attorney fees to respondent is vacated.

The County is awarded its costs on appeal.

MORI, J.

We concur:

COLLINS, Acting P. J.

ZUKIN, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PARAMOUNT PICTURES CORPORATION, | B317513 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC721604) |
| v. | ORDER GRANTING PUBLICATION |
| COUNTY OF LOS ANGELES, | |
| Defendant and Appellant. | |

THE COURT:*

The opinion in the above-entitled matter filed on August 30, 2023, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above-entitled matter be published in the Official Reports.

_____

* COLLINS, Acting P.J.        MORI, J.        ZUKIN, J.